## Cain, et al. v. Gray, et al.

### (Decided January 25, 1912.)

### Appeal from Knox Circuit Court.

1. **Children Born Out of Wedlock, Legitimized by Subsequent Marriage of Parents.**—Children who are not born in lawful wedlock, but after birth their mother married their reputed father who claimed and treated them as his children as long as he lived, under the statute this conduct legitimized them.

2. **Deeds—Conveying Title—Statutory Provision—Notice to Purchaser.**—Under section 496, Kentucky Statutes, providing that "no deed or deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration without notice thereof, as against creditors, until such deed shall be acknowledged or proved according to law and lodged for record," does not require the deed to be actually recorded before it will operate as constructive notice to purchasers.

3.	Same—Legal Lodgment for Record.—One whose deed to land
was found in 1907, contained a memorandum thereon made by the
clerk in 1847, that the deed was recorded and the page of the
record on which it was recorded, conclusively shows that she
had legally lodged it for record, and when she took it from the
office she had the evidence of its having been properly recorded,
and she was not required to look at the record book to ascertain
whether it had been recorded. She had a right to assume that
it had been.

JOHN H. WILSON for appellants.

J. M. ROBISON for appellees.

Opinion of the Court by Judge Nunn—Affirming.

Prior to December 18, 1847, one Pearson Duncan owned and resided upon about three hundred acres of land near what is now known as Gray's Station, in Knox County, Kentucky. He conveyed the whole of the land, on the day named, to his daughter, Malinda Brittain. The deed was duly executed by Duncan, the clerk made out the proper certificate, the taxes were paid and the deed lodged with the clerk for record. No part of it was recorded, except the body of the deed and the signature. The deed was taken from the office by Brittain, and it appears that the failure to record the clerk's certificate was not discovered until 1907, which was after this litigation was instituted. It appears that Mrs. Duncan, the wife of Pearson Duncan, did not sign the deed, but as she only owned a dower interest in the land and is now dead, that fact does not affect the questions involved in any way. Pearson Duncan died in 1862; his daughter, Mrs. Brittain, died in 1869, leaving as her only heirs at law, her mother and two nephews, John G. and Parks B. Gray, the only children of her only sister, Elizabeth Duncan, who married William Gray and died long before the death of Mrs. Brittain. It seems that when Mrs. Brittain died, her mother labored under the belief that she took the whole of this land as the heir of her daughter, and in 1873 she became unfriendly with her grandchild, Parks B. Gray, and made a will devising the whole of the land to her brother, her grandchild, John G. Gray, for life, with remainder to his children; but it seems John G. Gray was not pleased with such an arrangement so he deeded one-half, or a specified boundary of the land, to his brother soon after the death of their grandmother, and, at about the same time, sold the remainder of the

land to Tice Cain and gave him a general warranty deed purporting to convey the whole estate. The Cains resided upon the land and used it as their own as long as they lived, except they sold and conveyed twelve or fifteen lots, altogether containing about sixty acres, to as many persons for the erection of homes by the purchasers, the land being situated near a coal mine and what is now known as Gray's Station. Parks Gray and his vendees have been in possession of that part of the land conveyed to him by his brother, since the date of the conveyance. John G. Gray died in 1904 and his children are now claiming in this action that part of the land sold to the Cains. The Cains are claiming the land under the deed from John C. Gray. They claim that John G. and Parks B. Gray were the owners of the whole of the land by descent from their grandfather, they being the only children of one of his daughters and there being no other children or grandchildren, that while the deed by Pearson Duncan to his daughter, Mrs. Brittain, all of which was recorded in the clerk's office except the certificate, was valid and binding between the parties to it and those who took from them as heirs, yet it was not binding as to innocent purchasers for value. They further contend that the manner in which the deed was recorded did not operate as constructive notice to subsequent and innocent purchasers for value. They also contend that Mrs. Brittain and Mrs. Gray were not the children of Pearson Duncan; that they were each born out of lawful wedlock and before the marriage; that the deed to Mrs. Brittain if it amounted to constructive notice to them, was not binding and Mrs. Brittain had no right to claim anything under it as the consideration was love and affection and required her to support and furnish Pearson Duncan and his wife the necessaries of life so long as they lived and she failed to comply with this requirement. They further claim that the will of Mrs. Duncan by which she attempted to bequeath to her grandson, John G. Gray, the whole of the land for life, with remainder to his children, is ineffective in so far as it attempts to devise any remainder interest to the children, as the will had the effect to pass the fee to John G. Gray. It is not necessary to devote much time to the two last propositions. We are of the opinion that the terms of the will gave John G. Gray only a life estate and the remainder to the

children. She further attempted to provide in the will that neither he nor his children should have power to dispose of the land. This provision is void, but it does not, however, render the remainder of the will invalid. The preponderance of the evidence indicates that Malinda Brittain and Elizabeth Gray were not born to Mrs. Duncan, whose maiden name was Foley, in lawful wedlock, but after their births she married Pearson Duncan, who claimed and treated them as his children as long as he lived, and he spoke of Mrs. Brittain in the deed referred to as his "daughter," and this conduct, under the Statutes of Kentucky, legitimatized them. There is no evidence to the effect that Mrs. Brittain failed to fulfill the requirement in the deed imposing upon her the duty of furnishing Duncan and his wife the necessaries of life as long as they lived, and if there were, appellants would have no right to complain; the heirs of Pearson Duncan alone could take advantage of such failure. The deed from Pearson Duncan to Mrs. Brittain was found in 1907 among the papers of the administrator of Judge Brittain, the husband of Malinda Brittain. It appears to have the necessary certificate and endorsements written on it, and the writing all appears to have been done at the same time and corresponds in appearance with the date of the deed. As soon as the deed was found, it and the certificate were properly recorded.

As claimed by appellants, this writing was valid as between the parties to it and binding upon those who took by descent from them. Appellants and their ancestors, the Cains, never had any notice of this complete deed until after it was found in 1907, and only constructive notice of it, if it amounted to constructive notice as recorded in December, 1847.

The questions to be determined are: First, whether the deed as recorded in 1847, amounted to constructive notice to subsequent, innocent purchasers for value? Second, if it did not amount to such notice, should the innocent purchaser be made to suffer or should the vendee in the deed and her heirs sustain the loss? The present statutes with reference to the execution and recording of deeds and their effect after recorded, are in substance the same as when the deed was executed to Mrs. Brittain. Section 501 of the present statute, declares when a deed may be admitted to record, and provides that when a deed is executed in this State it may be admitted to record, first, on the acknowledgment before

a county court clerk or a deputy or a notary public, by the party making the deed, and also describes other means of acknowledgment which will also authorize it to be recorded. It will be noticed that under this section a deed is not a proper instrument for record until it is signed and acknowledged. It is provided by section 511, Kentucky Statutes, that:

"The clerk of each county court shall record all instruments of writing embraced in any section of this chapter, which shall be lodged for record, properly certified, or which shall be acknowledged or proved before him as required by law. He shall also record the certificates indorsed on the same, and shall certify the time when the instrument was lodged in his office for record. If acknowledged or proved before him, he shall also certify the time of doing the same, and by whom proved, and that the instrument and certificates thereon have been duly recorded in his office."

This section requires the clerk to record the deed and also the certificate of acknowledgment. In the case before us, the deed to Mrs. Brittain, as stated, was recorded but the certificate thereto was not. The clerk placed it upon the record in such a way as to make it appear that it was not a recordable instrument. It appears upon the record as an instrument of no greater effect than a bond for title, and, in our opinion, as recorded it did not have the effect of constructive notice to subsequent purchasers or creditors. Having arrived at the above conclusion, the question arises as to whether the innocent purchasers or the heirs of Mrs. Brittain should be made to suffer by reason of the clerk negligently failing to record the certificate. Section 496, Kentucky Statutes, provides:

"No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deeds shall be acknowledged or proved according to law, and lodged for record."

It will be noticed that this section does not require the deed to be actually recorded before it will operate as constructive notice to purchasers, but provides that it will so operate if it is acknowledged or proved according to law and lodged for record. Section 520 of the statutes is as follows:

"No deed shall be held to be legally lodged for record until the tax be paid thereon."

When the deed to Mrs. Brittain was found in 1907 it contained all the entries and certificates referred to in the sections of the statute named, and there was a memorandum on the deed made by the clerk in 1847 stating when the deed was recorded and the page of the record on which it was recorded. This shows conclusively that Mrs. Brittain legally lodged the deed for record and when she took it from the office, if she did so, she had the evidence of its having been recorded properly. She was not required to look at the record books to ascertain whether it had been recorded; she had a right to assume that it had been. It was the duty of the clerk, under the circumstances, to properly record the deed so it would operate as constructive notice against subsequent purchasers; and if he failed to do so, he and his bondsmen are liable to any one injured thereby. See the cases of Webb v. Austin, 22 Ky. Law Rep., 764, and Buckner v. Davis, 19 Ky. Law Rep., 1349, and 34 Cyc., pages 588 and 589. In the case of Bank of Ky. v. Haggin, 1 A. M. Marshall, 306, after stating that acknowledging and lodging a deed for record complied with the law in so far as the grantee in the deed was concerned, the court said:

"The law no doubt pre-supposes that the clerk will retain the possession of the deed until it is recorded, and it is indisputably a violation of his duty not to do so. For such violation of duty the clerk would be responsible for any injury which a creditor or purchaser might sustain thereby. But the law has not, on that ground, declared that the deed shall be void; and we have not, as expounders of the law, any power to do so. If indeed the proprietor of a deed of conveyance should withdraw it from the clerk before it was recorded, for the fraudulent purpose of deceiving creditors or purchasers, it might admit of some question whether the deed would not be void as to him upon general principles."

See also the case of Throckmorton v. Price, 28 Texas, 605. In the case of Herndon, &c. v. Ogg, 27 Ky. Law Rep., 268; 119 Ky., 814, this court, when it was not really necessary for a settlement of the question therein involved, said in substance, when construing section 500 and also the other sections of the statutes with reference to deeds, that it was the duty of the grantee of a deed to see that it was recorded. This was error, and that opinion is overruled to the extent that it so declares.

Appellants claim that the lower court erred in not allowing them to recover for the improvements and the

original purchase money paid by Cain who purchased from Gray his life estate in the land and had the use of it from the date of the purchase until Gray's death in 1904. They had no right to improve the property and place a lien upon it as against the remaindermen. At all events, the lower court considered the use of the property from John G. Gray's death up to the time of the trial, as equal at least to appellants' equity for the improvements and the purchase money their ancestors paid for the land, and refused to render a judgment for either in this respect, and we are of the opinion that the court did not err in this matter.

For these reasons, the judgment of the lower court is affirmed.