## Fordson Coal Company v. Wells et al.

(Decided Oct. 14, 1932.)

292

CLEON K. CALVERT and J. G. BRUCE for appellant.

M. C. BEGLEY for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

The plaintiff, Fordson Coal Company, on July 30, 1927, sued for possession of two tracts of land, described with particularity, upon which it alleged the defendants James Wells, Isaac Wells, and Jason Wells had, within fifteen years theretofore, wrongfully entered, and of which they were then wrongfully retaining possession; it was unsuccessful and has appealed. Unless we mention their particular names, we shall hereinafter refer to these parties just as they were known in the trial court.

The plaintiff refers to this as an action of "trespass to try title"; the defendants, as an action in "ejectment". The latter is the correct name for this proceeding in this state, and the two actions are essen-

tially the same. See Morse v. Buskirk, 167 Ky. 571, 181 S. W. 173, and Chenault v. Quisenberry, 57 S. W. 234, 22 Ky. Law Rep. 79, Id., 56 S. W. 410, 21 Ky. Law Rep. 1771, and Id., 43 S. W. 717, 19 Ky. Law Rep. 1632. The plaintiff must establish its title. This the plaintiff did by exhibiting a chain of title from the commonwealth to it as regards each tract, but the defendants contend there is a break in this chain. This alleged break in this.

The Plaintiff's Exhibit No. 7 is a certified copy of a deed from Henderson Baker et al. to Ira Wells, which the county clerk certifies is a copy of a deed of record in her office in Deed Book E at page 77. On this deed as copied in this record, there appears this certificate:

"State of Kentucky Perry County Sct.

"I, Ira J. Davidson Clerk of the County Court for the County and State aforesaid do certify that the foregoing Deed of Conveyance from Henderson Baker & John Baker to Ira Wells was this day produced to me in my office by the said Grantors and was acknowledged by them the said Henderson Baker & John Baker to be their acts and Deed for the perpos therein mentioned wherefore the same together with this certificate has been Duly Recorded in my office Given under my hand this 16th day of January 1877."

The break asserted consists in the failure of this copy to show Davidson signed this certificate upon the face of the deed book. This exhibit was filed by C. G. Queen in the course of his deposition given April 19, 1929. When the witness filed this exhibit, the notary should have marked it "filed," but neither it nor any of the other fourteen exhibits filed by the deponents are marked "filed" either by the notary or by any one.

How these exhibits got into this record, when or why, nowhere appears, except they correspond to exhibits the witness deposed he was filing, and the notary in his certificate says:

"That said transcript is a true, full, and complete copy of said shorthand notes and contains all of the true questions propounded and answers given, and that together with all objections of counsel, made at the time of said taking; that the Ex-

hibits number one to fifteen, inclusive, and are attached hereto and returned herewith.''

These depositions were filed with the clerk of the circuit court on May 9, 1929, but he makes no mention of filing any exhibits with them but he includes them in the record which he certifies to this court.

No exceptions were noted by the notary at the time this exhiibt was filed, and there is nothing to show that any exceptions were ever filed to these depositions as contemplated by section 586 of the Code of Civil Practice, so it is apparent that this question has been raised for the first time in this court, which is too late.

Some one has made an omission. Whether this omission was made by Ira J. Davidson, the county clerk who recorded this deed, or by Ella C. Hopkins, the county clerk who made this copy, we cannot say, but it is possible that a timely objection might have resulted in some such discovery as was made in the case of Cain v. Gray, 146 Ky. 402, 142 S. W. 715.

To James Wells patent No. 63941 was issued February 3, 1891. Wells had discovered what he regarded as some vacant land lying between the Henderson Baker patent 30948 and the Ira Wells patent 34739 on the north and Levi Pennington patent No. 14156 on the south, and accordingly he had a survey made and procured a patent for the following boundary of land:

"Beginning at a pine and chestnut oak, on top on the divide between Green Briar Branch, and Polls Creek, the same is the First Corner, to patent No. 30948; thence with the closing call of patent No. 30948, thence north 56¾, east 135, poles to a stake, corner to, of same, thence north 33 degrees west 7½ poles to a stake in said line also in line of patent No. 34739; thence with the lines of same, south 73½ east 50 poles north 70½ degrees east 26 poles south 71 degrees east 48 poles to a stake in line of patent No. 34739, thence south 37½ degrees west 161 poles to a stake corner of patent No. 14156 thence with reverse line of same south 85½, west 120 poles to a stake in said line, thence north 80 west 81 poles to the Beginning.''

This overlaps some of the land previously patented to Henderson Baker by patent 30948, issued Sep-

tember 29, 1858, to Ira Wells by patent No. 29637, issued September 27, 1858, and to Henderson Baker by patent No. 12785, issued March 20, 1849, and embraces land, included in these older patents, now owned by the Fordson Coal Company, under chain of title connecting therewith.

We are not concerned with any land embraced within this James Wells patent No. 63941 that is not included in the premises described by the Fordson Coal Company in its petition, and as to those parts of the land described by it which this James Wells patent No. 63941 overlaps, the title of the Fordson Coal Company, being the older, must prevail unless the defendants are able to overcome it in some way.

A month after this suit was filed, James Wells made a deed to Jason Wells, and two days later he made a deed to Isaac Wells, which deeds were both lodged for record on September 9, 1927. Copies of these deeds are in the record. They contain rambling descriptions which we are utterly unable to identify. A surveyor testified for the defendants; he made a plat of the premises and was perhaps as much confused by these descriptions as we are; at least he made no effort to show them on his plat. The draftsman of these deeds appears to have known of the requirements of section 495, Ky. Stats., and these deeds state James Wells got these lands from ——— by deed dated ——— and recorded in ——— Deed Book ———, page ———, records of ——— county court clerk's office. Why the clerk recorded these deeds in the face of that statute is difficult to see. About all we can make out of these deeds is that the defendants are claiming all the lands described and claimed by the plaintiff, the defendant Isaac Wells claiming the western part and Jason Wells the eastern part. As they claim under James Wells, we will dispose of his claims, and that will dispose of the claims of his sons Isaac and Jason. Here are the bases of his claims: (a) The junior patent to James Wells No. 63941 above mentioned; (b) a deed from H. B. Davis to James Wells dated March 20, 1906; (c) a deed from Hughes Lewis to James Wells dated March 12, 1910; (d) a claim of adverse possession covering everything.

On October 16, 1890, Ira Wells, the father of James and the grandfather of Isaac and Jason Wells, made

a deed conveying to W. T. Bailey property described therein as "All of the Henderson Baker patent No. 30948, and all of the Ira Wells patent No. 34739." If the description had stopped there, it would have been all that was needed, but it went further and undertook to give a description of these patents by metes and bounds, and in so doing one of these lines which started at a pine and chestnut oak on a ridge and should have been described as running "N. 82 E." was erroneously described as running "N. 57 E." On October 20, 1890, W. T. Bailey conveyed this property to Elder H. Patterson, trustee, etc., using the same description and making the same error.

On September 23, 1890 (note the date), James Wells made his survey on which his patent No. 63941 was issued, and he described this line as beginning at this pine and chestnut oak and running thence "N. 56¾ E." See first line in his patent copied above.

In the separate answer of James Wells filed after the proof was taken, he says that Patterson and plaintiff claiming under Patterson have claimed the closing line of the Baker patent No. 30948 to be upon a bearing of north 57 degrees east, and, having so elected, the said Patterson and those claiming under him have never, up to the filing of this suit, claimed the land described as first tract in the petition, south of said closing line, as it would run on a bearing of north 57 degrees east, which is in accordance with the running of the first line of the James Wells patent No. 63941, at the time it was originally surveyed and located; for these reasons plaintiff is estopped from now changing its deed line to run on any other bearing than north 57 degrees east, or from claiming any of the land within the James Wells patent. In this amended answer he further pleads:

"That he claimed a portion of the land in controversy in the immediate vicinity of the Forks of Green Briar Branch, of Polls Creek, under and by virtue of a deed of conveyance to him from H. B. Davis, and wife Executed March the 20th, 1906, and of Record, in the Office of the Clerk of the Leslie County Court in Deed Book page —— which tract of land his vendor, H. B. Davis, purchased from William Ingle, as shown by the Testimony of the said H. B. Davis, that before the said H. B. Davis,

purchased said land from said Ingle he had the Title thereto, examined, that one A. K. Cook, at the time, was the attorney and agent for the Kentucky Coal Lands Company, under which company plaintiff claims title, or the attorney and agent for the International Development Company under which company plaintiff claims title, and the said A. K. Cook, as said attorney and agent for said companies advised the H. B. Davis, before he took his deed from Ingle, that his company did not claim the land embraced in the Ingle Deed, above referred to, giving as his reason therefor, that said Company's line ran down the hill by a Sourwood and about 50 or 100 feet below the Dwelling house then standing on said Ingle Tract.

"The Sourwood mentioned by the said A. K. Cook, agent and attorney for the Kentucky Coal Lands Company and International Development Company, stands a short distance north of the 8th corner of the James Wells patent, as shown on the map of W. A. Ward, and said line as described to the said H. B. Davis, by the said A. K. Cook, runs from said sourwood, a southeast course and with the line of the said James Wells patent, to its 7th corner, and by reason of the fact that the said A. K. Cook advised the said H. B. Davis, defendant's vendor, of the location of said line as the line of the said Kentucky Coal Lands Company or the line of International Development Company, whichever, of said companies did claim these lands at that time, being the remote vendors of the plaintiff, the plaintiff, Fordson Coal Company, is estopped from claiming any portion of the land set out and described in the second tract of its petition north of said line and said estoppel is here pled and relied on as a complete bar to its recovery herein."

In this amended answer James Wells claims all these lands by an adverse possession of more than fifteen years, and that up until and prior to the institution of this suit his two codefendants, Isaac Wells and Jason Wells, were his tenants on said land, and lived on same under him.

These please of estoppel are supported by the evidence for defendants and contradicted by the evidence of A. K. Cook and other witnesses for the plaintiff.

## Claim Under H. B. Davis Deed.

When this deed was made by Davis to James Wells, Davis was in possession of the premises described and claimed by the Fordson Coal Company, under a lease from the Kentucky Coal Lands Company, one of the vendors of the Fordson Coal Company; hence all Davis could convey was his tenancy. See section 2291, Ky. Stats. When a man enters under a tenant, he becomes tenant, that is all. A stream can rise no higher than its source.

## Claim Under Hughes Lewis.

The land embraced in deed from Hughes Lewis to James Wells covers no part of the premises described and claimed by the Fordson Coal Company, and no witness so testifies. The Fordson Coal Company, is seeking to eject the defendants from certain described premises; the defendants are resisting. The defendants are asking no affirmative relief; therefore we have no further interest in the Lewis tract.

We will now return to the pleas of estoppel. The basis of this plea as to the Davis tract is that A. K. Cook, an attorney for one of the Fordson Coal Company's predecessors in title, told Davis that the company's lines did not include any part of the land Davis was contemplating buying from Ingle. The remote vendor of plaintiff who then owned this land was the Kentucky Coal Lands Company, a corporation. Being such, it could only act through agents, and persons dealing with an agent of a corporation must know, at their peril, the nature and extent of the powers of such agent. Davis testifies and in his testimony says Cook was then the attorney for the company. It is so well known that attorneys are only employed to represent people in matters that are either then in, or likely to be in, litigation that Davis must have known it was not within the scope of Cook's agency to locate the lines of the lands claimed by the company. Mr. Cook denies saying anything of this kind to Mr. Davis, and says he had no authority to locate the company's lines or anything to do therewith, and that he never knew or professed to know anything of their location. Thus the representation on which Mr. Davis testifies he relied is sharply disputed, but, if the representation were clearly established, it would be of no avail to defend-

ants, for there is no showing the subject-matter of it was within the scope of Mr. Cook's agency.

Now as to the estoppel relied on to prevent the Fordson Coal Company from now claiming the southern line of the Henderson Baker patent runs N. 82 E. from the pine and chestnut oak because in some of the conveyances in plaintiff's chain of title it is given as N. 57 E., James Wells is in a poor position to complain, as he had already made his survey and obtained his patent No. 63941 before either of these deeds containing this erroneous call was made. One cannot imagine a less meritorious claim.

### Champerty.

The defendants claim that they were in adverse possession of this property on March 21, 1923, when the Fordson Coal Company bought it. Isaac Wells was then living on this property under a lease from plaintiff's vendor and had been so for many years. His possession was not adverse. They claim, however, that James Wells then had some peach trees planted on a portion of it, and conceding but by no means finding that he had planted these trees there without the consent and against the will of the Fordson Coal Company, or its tenant Isaac Wells, his son, it by no means follows it was such a possession as is required to render this deed champertous. Champerty is a harsh statute. When one attempts to defeat a claimant's title by showing a deed in his chain of title was champertous because there was then an adverse possession of the premises, he must prove the possession was contemporaneous, adverse, hostile, and so open, visible, and notorious, that it would have been brought to the notice of an inquirer or intending purchaser. See Mayes v. Kenton, 64 S. W. 728, 23 Ky. Law Rep. 1052.

Jason Wells testified he cultivated this land where this orchard stands in the year 1921, and that he set out these trees that fall, so they could have been no more than small sprouts on March 21, 1923. If we grant all this was done against the will and without the consent of the owner or its tenant, that was not enough. It does not begin to come up to the requirements set out above. Under his lease, Isaac Wells had a right to cultivate this land, and there is no evidence this corn was not grown by Jason Wells by the consent of his brother Isaac Wells. The adverse possession required

to render a deed champertous must be fully proven. First, he must show he had a hostile possession, and that must be shown by showing he was on the property and living there under some claim of his own in hostility to the true owner or else must be manifesting his possession in some openly visible manner. One does not sufficiently manifest his possession to a field by planting a gooseberry bush in each corner of it, or a few peach trees, or by growing a crop of corn on it, where his brother, the tenant on the premises, had a right to do these things. He must clearly establish his possession was hostile, open, visible, and by no means permissive, and the evidence here does not measure up to that

### Estoppel by Judgment.

Defendants say that on or about the 25th of April, 1893, James Wells sued the Asher Lumber Company for entering upon his patent 63941 and cutting and removing therefrom 177 trees, the property of James Wells, that it answered and denied James Wells owned these trees, and asserted its purchase thereof from Ira Wells, the rightful owner, and Ira Wells was made a party defendant and called on to defend his title, and that upon the issue thus made James Wells obtained a judgment against the Asher Lumber Company. He alleges that, after selling these trees, Ira Wells on October 16, 1890, sold the land he owned to W. T. Bailey, on October 20, 1890, Bailey sold to Patterson trustee, on November 19, 1890, Patterson sold to the Kentucky Coal Iron & Development Company, Limited, and it on August 5, 1892, sold to La Societe Anonyme du Centre des Appalaches, a Belgian corporation, and this record shows this Belgian corporation on November 1, 1894, sold to the International Development Corporation, and it on October 28, 1901, sold to the Kentucky Coal Lands Company. Defendant then sets up some litigation between the Asher Lumber Company and this Belgian corporation, wherefore, so say the defendants, the Fordson Coal Company is estopped to assert title to the premises claimed by it. Nothing is better settled than that, where an issue has been litigated to a conclusion, it cannot be subsequently litigated between these same parties or their privies. .

Here we have two lawsuits—one between James Wells and the Asher Lumber Company and Ira Wells begun on April 25, 1893, which terminated in a judg-

ment in favor of James Wells on July 2, 1894; the other begun on August 29, 1894, by the Asher Lumber Company against the above-named Belgian corporation, which terminated in a judgment in favor of the lumber company, on April 2, 1896.

We have already said Ira Wells on October 16, 1890, sold his part of the property to the Fordson Coal Company, described in its .petition; therefore he was not thereafter in privity with the owners thereof, and thus we have two lawsuits to one of which James Wells was a party but no one in privity with the Fordson Coal Company was so, and the other one to which the Belgian company was a party but James Wells was not so, nor was any one who is in privity with him a party. Hence this claim has no merit.

### Adverse Possession.

The defendants' claim of adverse possession they did not even attempt to establish. The plaintiff is the owner of the land described in its petition, is entitled to the possession thereof as against James Wells, Isaac Wells, Jason Wells, and all others claiming under them or either of them, and upon its application the court will award to it a writ of possession.

The judgment is reversed.