**Richard Michael KELLY, Jr., Appellant,**

v.

**Barbara COOK and Inter–County Rural Electric Cooperative Corporation, Appellees.**

No. 94–CA–000864–MR.

Court of Appeals of Kentucky.

June 9, 1995.

Elmer J. George, Lebanon, for appellant.

Elizabeth Nickels, Danville, for appellees.

Before COMBS, GUDGEL and SCHRODER, JJ.

SCHRODER, Judge:

This is a planning and zoning case which deals with the subdivision of land and conveyances thereof through the use of a recorded plat.

It appears from the record that Mrs. Eliza Kelly, a widow, owned a 183.24 acre tract of land in Marion County on June 8, 1993, when the local Planning Commission approved a subdivision plat (Kelly Estates Subdivision) of the farm for recording. The plat was recorded on the same date in the Marion County Clerk's Office. The plat demarcates a "30′ Utility Easement" on the southerly 30′

of lots 1 through 17 adjacent to Miller Pike, and the easterly 30' of lots 1, 18, 19, 20 and the southerly half of lot 21, which front on Caudill Lane. Overlapping and further extending is a 75' Building Setback line which is also clearly demarcated. The centerline of overhead electric lines are shown on lots 1, 5, 6, 14, and 15. The "Owners Certificate Of Ownership And Dedication" recites that the owner (Eliza C. Kelly 6–4–93) adopts this subdivision plat with the minimum building restriction lines and dedicates all streets etc. and other open spaces to public or private use *as noted.*

On June 12, 1993, appellant, Richard Michael Kelly, Jr. ("Kelly"), purchased tracts numbered 1, 2, 3, 4, 5, and 7 from Mrs. Kelly. Kelly's deed contained two express covenants to run with the land: (1) an agreement to abide by existing easements and those shown on the plat and (2) a prohibition against placing mobile homes on the property purchased. Appellee, Barbara Cook ("Cook") acquired tract number 9 in the Kelly Estates Subdivision by a deed dated July 14, 1993, containing covenants identical to those in Kelly's deed. Both deeds were recorded in the Marion County Clerk's Office on July 15, 1993.

In the fall of 1993, Cook attempted to make arrangements to have electrical services provided to her property (tract # 9) by appellee, Inter–County Rural Electric Cooperative Corporation ("RECC"). Kelly refused to permit Cook to access the easement across his property to afford electrical services to Cook's property. Cook and RECC filed a complaint against Kelly seeking a declaration of their rights in and to the 30' utility easement across Kelly's several tracts of land and enjoining Kelly from interfering with their use of this easement. Kelly answered Cook and RECC's complaint denying the allegation that either or both of the appellees had any right or interest in an easement across Kelly's property. Both Kelly and Cook/RECC filed memoranda on February 22, 1994, respectively supporting or opposing the motion for judgment on the pleadings as amended. Kelly attached to his memorandum as Exhibit C the affidavit of Samuel Todd Spalding, the attorney who performed Kelly's title examination at the time he purchased tracts 1, 2, 3, 4, 5, and 7. After reviewing all the pleadings, the memoranda, the exhibits, and having heard the arguments of counsel, the court entered summary judgment in favor of Cook and RECC, and enjoined Kelly from interfering with appellees' use of said easement.

On appeal, Kelly recognized the motions were converted to summary requests but alleges that under *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991), summary judgment is only proper when as a matter of law, it would be impossible for him to produce evidence at trial warranting judgment in his favor; and that his attached attorney's affidavit, Exhibit C, evidences a genuine issue of material fact so as to withstand summary judgment. We disagree.

We are confident that when Harry and Eliza Kelly purchased the 183.24 acre tract through Deed Book 74 at Page 75, their description was a "metes and bounds" description and any existing easement would have been set out as specific exceptions to the legal description or as exceptions to any warranties. Any recorded easements granted subsequent to purchase would have been in the form of an expressed grant from the owners to a specific utility, much like the 30' easement granted to the Marion County Water District by document recorded in Deed Book 89 at Page 161. The existing overhead electrical lines surely have their origin in a similarly expressed grant. Without citing specific authority, we can say that this is the way conveyances were done ever since the Commonwealth of Kentucky was carved from Virginia (except in Western Kentucky where the public land system exists, *see* KRS 1.010) in 1792. Then came planning and zoning, more specifically, "Subdivision Management" within Chapter 100 of the Kentucky Revised Statutes.

With an ever-expanding population, an increase in urbanization, and the division of farms into residential tracts, our General Assembly recognized the need for an easier way to divide and convey land. Their solution was subdivision regulations, which would change dramatically and forever conveyance

law involving most divisions of land of less than five acres. *See* KRS 100.111, sections 2 and 22. KRS 100.273 authorizes cities and/or counties to adopt regulations for subdividing land. Creating and adopting these "Subdivision Regulations" requires the establishment of a planning program or of a planning commission. The subdivision regulations are adopted by the legislative body or fiscal court (KRS 100.201, KRS 100.273, and *City of Lakeside Park v. Quinn,* Ky., 672 S.W.2d 666 (1984)).

Subdivision regulations under KRS 100.281 contain:

(1) The procedure for the submission and approval of . . . final plat and the recordation . . .;

(2) Specifications for the contents and the format of all subdivision plats;

(3) Requirements for the design of . . . utilities, . . .;

(4) Specifications for the physical improvements of . . . utilities. . . .

Subdivision plats, on the other hand, are approved by the planning commission as a ministerial function to insure compliance with said subdivision regulations. KRS 100.277. A plat is a map of the subdivision (KRS 100.111(16)). Once the plat is approved by the planning commission and recorded in the county clerk's office, a sale of land within that subdivision may be made by reference to lot or tract number in lieu of a metes and bounds description. *See* KRS 100.277(3). Likewise, the plat may also contain street, utility, and other facility dedications. KRS 100.281(4). (For allowances for street dedications in plats, *see Marshall v. Kent,* 210 Ky. 654, 276 S.W. 563 (1925); and *Hougland v. Perdue,* Ky., 361 S.W.2d 291 (1962)).

Obviously, under the scheme of subdivision regulations, dedications, restrictions, easements, and other encumbrances may be placed in the final subdivision plat, and subsequent conveyances of those tracts or lots would not require specific exceptions or grants within those deeds of conveyance.

(For a pre-Chapter 100 allowance *see Cassell v. Reeves,* Ky., 265 S.W.2d 801 (1954)). Therefore, when Kelly purchased lots (or tracts) numbered 1, 2, 3, 4, 5, and 7, he purchased subject to all dedications, restrictions, easements, and encumbrances, if any, delineated on said recorded plat, as well as the restrictions, easements, or encumbrances, if any, existing in the chain of title by grant [1], and including any new restrictions, easements, or encumbrances set forth in the subsequent deeds. *See Scott v. Long Valley Farm Kentucky, Inc.,* Ky.App., 804 S.W.2d 15, 16 (1991), where the Court said:

> The relative rights and obligations of the parties herein, by virtue of their ownership of the lands involved, are fixed by existing covenants at the time of their respective acquisitions.

The final question is a matter of policy. Must the subdivision regulations require subdivision plats to identify the particular utilities on whose behalf the easements are delineated (like under traditional conveyancing law), or are general dedications, reservations, etc. in a plat sufficient to grant a public utility the right to the use of the easement in performing its function? We believe that under the scheme of KRS Chapter 100, more specifically, "Subdivision Management," a general dedication or reservation in the plat of a "30′ utility easement" would contemplate and allow the scope of use proposed by appellees, the installation and maintenance of electrical service lines, without the necessity of specifically naming RECC.

For the foregoing reasons, the judgment of the Marion Circuit Court is affirmed.

All concur.

---

[1]. Although subdivision regulations do not always require the surveyor to show all easements existing prior to platting, many in fact *do* show such easements, if any.