**Sid GRANNIS and Loretta Grannis, Appellants,**

v.

**Charlie SCHRODER and The Harrison County Board of Adjustments, Appellees.**

**No. 96–CA–2240–MR.**

Court of Appeals of Kentucky.

Dec. 5, 1997.

Discretionary Review Denied Oct. 7, 1998.

Jay Delaney, Cynthiana, for Appellants.

Wayne D. Hood, Cynthiana, for Appellees.

Before BUCKINGHAM, GARDNER and SCHRODER,[1] JJ.

*OPINION*

SCHRODER, Judge:

This is a planning and zoning case which discusses the agricultural supremacy clause of KRS 100.203(4); what is an agricultural use; and the differences between a nonconforming use and a nonconforming structure.

The appellee, Charlie Schroder, a/k/a Charles J. Schroder ("Schroder"), owns about 30 acres in unincorporated Harrison County, approximately 2.8 miles north of Cynthiana on U.S. 27. His house is located up on a ridge with a barn down near the highway. The appellants, Sid Grannis and Loretta Grannis, live across the street from the barn. On November 13, 1995, Schroder made an application before the local board of adjustments for a conditional use permit for a home occupation. The request was to use the barn for a base of operation which was to store such things as his dump truck, backhoe, trailer, construction trailer, concrete forms, used railroad ties, used telephone poles, and concrete culvert pipes. Schroder, and one employee, use this equipment for the installation and repair of water lines, septic lines,

digging trenches for water runoff, and similar purposes, both for himself and for hire. The property is zoned agricultural (A–1U) under the Cynthiana–Harrison County–Berry Zoning Ordinance, hereinafter referred to as "ZO," which allows certain nonagricultural uses as well as certain nonagricultural conditional uses, including "d. Agricultural home occupations. . . ." The development standards under conditional uses require, among other things not in question, at least a 75–foot front yard setback. The barn in question sits closer than 75 feet.

On December 12, 1995, the Harrison County Board of Adjustments (BOA) conducted a public hearing on the request. The appellants were permitted to read a letter into the record stating their opposition to the proposal and to make general comments. Appellants were represented by counsel who questioned whether Schroder had a true agricultural use and whether the barn was a nonconforming structure. Others were permitted to comment, and an open discussion followed. The criticisms against granting the conditional use focused on whether the 30–acre tract was a true agricultural use because Schroder was observed only cutting hay and maintaining a residence. Also, Schroder proposed putting a concrete floor in the bays of the barn for storage and a water hydrant outside. Electric and phone lines were already in place and adequate. Critics questioned whether this was expanding or enlarging a nonconforming use.

At the conclusion of the public comments, the BOA voted to grant a conditional use permit for an agricultural home occupation to be conducted in the barn, subject to these conditions: storage of nonagricultural materials like plywood, scaffolding, etc. to be placed inside the barn, with the storage of railroad ties, fence posts, and other agricultural-type materials to be stored on the west side of the barn; a forty-foot vegetative buffer to be placed running parallel to U.S. 27, across from appellants' house; and the barn entrance off U.S. 27 to be wide enough for emergency vehicles and not to be blocked. The BOA went through the requirements of

1. Judge Schroder is not related to the appellee, Charlie Schroder.

the zoning ordinance and made specific findings on each element.

An appeal to circuit court was unsuccessful and appellants seek relief in this Court on these grounds: that a conditional use in an agricultural zone is to be subordinate to a principal permitted agricultural use, thus the BOA erred in finding Schroder used the majority of the 30–acre tract for agricultural purposes; and that the granting of a conditional use permit for the barn constituted an unlawful enlargement or expansion of a nonconforming structure. We disagree with both contentions and, thus, affirm.

■ The BOA's discussion during the public hearing of December 12, 1995 repeatedly refers to Schroder's right to use his property for agricultural uses like storing his backhoe, dump truck, and railroad ties if he uses them on the farm. The BOA determined that only when he uses the material on someone else's property or uses the equipment on someone else's property was the BOA's jurisdiction invoked. Appellants' position is that there is a serious question as to whether or not Schroder's use of the 30 acres is agricultural. All appellants see is Schroder occasionally cutting hay and potentially devoting five or six acres around the barn to his business. Appellants contend that is not an agricultural use.

Chapter 100 of the Kentucky Revised Statutes is commonly referred to as the enabling act for planning and zoning. Under KRS 100.203, cities and counties may enact zoning regulations. However, Section 4 of KRS 100.203 specifically exempts land used for agriculture from zoning regulations—except for setbacks, use of flood plains, and mobile homes. This "agricultural supremacy clause" (KRS 100.203(4)) does not simply make a farm a legal nonconforming use but takes it outside the zoning ordinances' jurisdiction, although not outside the master or comprehensive plan. That is an important distinction because by exempting agricultural land from application of the zoning ordinance, the provisions of KRS 100.203, which deals with changes in nonconforming uses, do not apply. A community can still plan, even develop, a comprehensive or master plan, and go so far as to adopt a zoning map including all the property in its jurisdiction, whether used for agriculture or not. However, as long as the land is used for agricultural purposes, the adopted zoning regulations (except for the three exceptions above) do not apply or attach to the property. Zoning ordinances frequently include agricultural zones in both the text and the map. The ordinance covering Schroder's property, ZO, Section 671A Agricultural Zone (A–1U) Unincorporated Areas, is typical and includes agricultural activities, including a single family farm residence, as a permitted principal use. Technically, it is not necessary to list these uses because of the agricultural supremacy clause, but as a practical matter, it makes the zoning ordinance easier to read and all inclusive.

Agricultural zones, like the A–1U zone in question here, typically include some nonagricultural uses as principal permitted uses, such as hospitals, day cares, and churches. Some nonagricultural uses are listed as conditional uses in the A–1U zone, like recreational facilities, slaughterhouses, feedlots, and home occupations. *Id.* These uses, also being nonagricultural in the sense that they are not typical farming operations, are subject to the BOA's approval which may be given subject to certain conditions as the BOA did in Schroder's case. *See* KRS 100.237. Under the local ordinance, a home occupation is allowed in an A–1U zone *if* the home occupation is an agricultural home occupation. ZO, 671A Agricultural Zone (A–1U) Unincorporated Areas, § 3. Conditional Uses: d. agricultural home occupations. Under the ZO, Article 2, Section 200, an agricultural home occupation is defined as:

An occupation conducted in a dwelling unit or an accessory building, as a conditional use in an Agricultural Zone, provided that:

. . . .

4. An agricultural home occupation may be conducted in an accessory building provided that the use is clearly *incidental and subordinate to* the land's principal *agricultural use.* (Emphasis added.)

This brings us back to what an agricultural use is, or when land is being used for agricultural purposes under the agricultural su-

premacy clause of KRS 100.203(4). KRS 100.111(2)[2] defines an agricultural use to mean:

> the use of a tract of at least five (5) contiguous acres for the production of agricultural or horticultural crops, including but not limited to livestock, livestock products, poultry, poultry products, grain, *hay*, pastures, soybeans, tobacco, timber, orchard fruits, vegetables, flowers or ornamental plants, including provision for dwellings for persons and their families who are engaged in the above agricultural use on the tract, but not including residential building development *for sale or lease to the public*[.]  (Emphasis added.)

The Schroders have over five contiguous acres, including a dwelling, and they produce hay. There is no requirement that a person make the best agricultural use or be efficient in the operation of a farm. Some farmers don't like cattle, horses, or any animals. Some ranchers don't like growing crops. Some people consider farming a career, while others treat it as a hobby or a second job. One owner may decide to bushhog the fields, while another may decide to allow nature to take its course and encourage gradual reforestation. Adjacent owners may have mixed uses on one tract, and a single crop may be produced on another. Some crops, like hay, may be harvested twice a year, while others, like some trees, may produce only one harvest per generation. None of these scenarios is less agricultural or silvicultural than another, although their intensity, efficiency, and profitability may all be different. The Schroders have produced hay in the past, but even if they decide to allow nature to reclaim all but an area immediately around the house, and six acres around the barn, it does not mean that the agricultural use is now incidental or subordinate to the home occupation. Again, the other twenty or so acres are being used, albeit not very wisely from a farmer's point of view. But eventually, the land may produce timber, firewood, flowers, ornamental plants, or wildlife habitats, which again may be a poor choice, but is undeniably an agricultural use. In a few years, the owner may decide to cut everything down and raise cattle or even ostriches. The point is that a user of agricultural land can change one agricultural use to another with impunity. KRS 413.072, enacted after Schroder's request, guarantees the right to change without being labeled a nuisance, trespass, or *zoning violation.*

Appellants' second argument is that since the barn was located within the 75–foot setback for front yards, the BOA could not allow the home occupation to occupy the barn because this would amount to an enlargement or extension of a nonconforming use in contravention of KRS 100.111(12). Nobody knew when the barn was constructed. However, there was no question that it was built before the adoption of the 75–foot setback requirement, which makes it a legal nonconforming structure under KRS 100.253(1). Legal nonconforming uses can continue their existence, in contrast to illegal nonconforming uses or structures which are built *after* adoption of and contrary to the zoning ordinance. Illegal nonconforming uses can be ordered torn down or otherwise made conforming. *See Deerfield Co. v. Stanley,* Ky., 441 S.W.2d 119 (1969).

The home occupation is allowed as a conditional use and was approved by the BOA so it is not a nonconforming use. The barn, however, whether used for agricultural products or for the home occupation, sits within the 75–foot setback, which makes it a nonconforming structure or building. KRS 100.253(1) applies to both nonconforming buildings and nonconforming uses or premises. KRS 100.253(2) prohibits the enlargement or extension of the nonconforming use or structure. Schroder intends on pouring a concrete floor in the barn, or at least in some of the bays. The barn already has electricity and a phone. No bathroom is being added, although a freeze-proof water hydrant is planned for outside. Is this an extension of the nonconforming status or simply maintenance and ordinary repairs?

**2.** The ZO parrots the statute, but that definition is irrelevant as the state statute preempts any local ordinance on the same matter.

■ KRS 100.253, which recognizes that legal nonconforming uses have a right to exist, also recognizes that the policy and spirit of zoning laws are geared toward the gradual elimination of nonconforming structures. *Attorney General v. Johnson,* Ky., 355 S.W.2d 305 (1962); *Franklin Planning and Zoning Commission v. Simpson County Lumber Company,* Ky., 394 S.W.2d 593 (1965). Over the years, courts have developed a rule of interpretation that allows ordinary repairs, like replacement of decayed wooden walls, but not enhancements like replacement of a wooden wall with a brick wall. *See A.L. Carrithers & Son v. City of Louisville,* 250 Ky. 462, 63 S.W.2d 493 (1933). We also recognize that enhancements can be made when required by law. For example, in *A.L. Carrithers & Son v. City of Louisville, supra,* a dairy or milk processing plant operated as a nonconforming use in a wooden building. Changes in the health laws required relocating can-washing and the by-products room which required structural additions. The dairy wanted to rebuild the entire structure with brick, but the Court disallowed it. The additions required by law could be added but the enhancements, i.e. brick and other improvements, were not allowed as they would delay the phasing out of the nonconforming use in the now residential zone. *Selligman v. Von Allmen Bros.,* 297 Ky. 121, 179 S.W.2d 207 (1944) and *Goodrich v. Selligman,* 298 Ky. 863, 183 S.W.2d 625 (1944) define structural alterations as improvements or changes which convert the structure into a new or substantially different structure.

The local ZO also addresses the problem. 520–A Regulation Of Nonconforming Structures and Uses, Section 3, provides:

Any nonconforming use, as a matter of right without the need for any approval by the Board of Adjustment, may be structurally altered, repaired or extended throughout the parts of the building that existed and were arranged or designed for such use at the time when it became nonconforming. For the purposes of this subsection, *repair* shall be limited to an expenditure during a one year period of *no greater than 25% of the replacement cost* of the structure of use. Any additional expenditure shall be deemed a rebuilding for which the requirements of Section 520A-(1) must be satisfied. (Emphasis added.)

■ Schroder is using leftover concrete or will purchase enough to pave some or all of the stalls and bring the floor in front of the doors up to the bottom of the door. It didn't appear to the BOA that the cost was going to exceed that allowed by ordinance. Nor did it appear that these modifications, improvements, or repairs are going to convert the structure into a new or substantially different structure. Specific dollar amounts were not entered into evidence, but under the ZO 502A-(3) quoted above, the owner, as a matter of right, did not need approval if the cost was under 25% of the barn's value. Therefore, the burden would be on the appellants to prove the cost exceeded the ZO percentage. The question on review is whether the administrative agency's decision is supported by substantial evidence, *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission,* Ky., 379 S.W.2d 450 (1964), or whether the administrative decision was arbitrary, meaning clearly erroneous and unsupported by substantial evidence. *Danville–Boyle County Planning and Zoning Commission v. Prall,* Ky., 840 S.W.2d 205 (1992). The BOA appears to have been correct in permitting the repairs, and the circuit court was, thus, correct in affirming the BOA's decision.

Therefore, for the above stated reasons, the judgment of the Harrison Circuit Court is affirmed.

All concur.