Paul NASH, et al., Appellants,

v.

CAMPBELL COUNTY FISCAL
COURT, et al., Appellees.

No. 2009–SC–000152–DG.

Supreme Court of Kentucky.

April 21, 2011.

Rehearing and Modification Denied
Aug. 25, 2011.

Robert Edward Blau, Blau & Kriege, PLLC, Cold Spring, KY, Counsel for Appellants.

Jeffrey C. Mando, Adams, Stepner, Woltermann & Dusing, PLLC, Covington, KY, Counsel for Appellees Campbell County Fiscal Court, the Campbell County Planning and Zoning Commission and/or Review Board, Dave Otto (Campbell County Commissioner), Ken Rechtin (Campbell County Commissioner), Peter J. Klear (Campbell County Planning and Zoning Commission Director), and Stephen Pendery (Judge Executive).

Ralph Gary Winters, Michael P. Cussen, McCaslin, Imbus & McCaslin, Cincinnati, OH, Counsel for Appellee Jack Snodgrass (Campbell County Clerk).

Opinion of the Court by Justice SCHRODER.

The appeals in the Court of Appeals were consolidated and an opinion was issued which revisits the "agricultural supremacy clause," the exemption of certain agricultural land from zoning and subdivision regulations under Chapter 100 of the Kentucky Revised Statutes. We accepted discretionary review to give some guidance in applying the agricultural exemption to both the *use* and the *division* of land.

## I. INTRODUCTION

Paul and Pat Nash (Nash) own about twenty-eight acres in Campbell County. Clifford and Toby Torline (Torline) own about thirty-five acres in Campbell County. Both Nash and Torline desired to divide their parcels into tracts containing

five or more acres each, for agricultural uses. Nash and Torline see the results as mini-farms, while the County sees residential subdivisions with large lots. The County Clerk is caught in the middle and seeks guidance as to whether or not he should accept the deeds for recording. The County has taken a stand with two ordinances[1] designed to prohibit any division until the property owners prove to the Planning Commission that the divisions were for agricultural purposes. Nash and Torline take exception to having the burden placed on them, countering that the County must prove the divisions were not exempt from subdivision regulations. The trial court agreed with Nash and Torline and held the ordinances in question violated the agricultural supremacy clause and were therefore unconstitutional. The Court of Appeals reversed and we accepted discretionary review.

## II.  FACTS

### A.  THE NASH PROPERTY

Paul and Pat Nash own about twenty-eight acres at 4398 Indian Trace Road in Alexandria, Campbell County, Kentucky. Indian Trace Road is an "old roadbed" that borders the westerly property line of the Nash property.[2] Public maintenance of Indian Trace Road stops before reaching the Nash property. Access to the Nash property is by what is locally known as Beck Road. Beck Road is an old road or driveway that begins somewhere on the "old roadbed" of Indian Trace Road and proceeds to the Nash property.[3] The driveway continues through the Nash property to a house. At the end of the pavement, by the house, begins a gravel drive that continues to the proposed farms in Tract 2 and Tract 3. In August of 2003, the Nashes had their property surveyed and prepared five deeds of five or more acres each. Only Tract 1, from which the four new tracts were divided, has frontage on the "abandoned"[4] old Indian Trace Road or Beck Road. With the proposed agricultural divisions, access to all five tracts was to be by way of a twenty foot wide easement for ingress and egress. The easement begins at the end of Beck Road and the beginning of the driveway, and continues over the driveway up to the house where the pavement stops, and then continues along the gravel driveway to proposed Tract 2 and Tract 3.

### B.  THE TORLINE PROPERTY

Clifford and Toby Torline own a parcel of about thirty-five acres in Campbell County, Kentucky. The Torline property has no road frontage on a public street but is accessed by a driveway on an easement over a neighboring property. The Torlines also desire to divide their property into five tracts of five or more acres each for agricultural purposes. Access to each of the five tracts was to be by way of the private easement from a public road over a neighbor's property to the Torline property, and then by way of a forty foot wide old roadbed from Indian Trace Road to the driveway of Nash. The Master Commissioner's Report which was adopted by the Circuit Court also found that "most of Beck Road had been abandoned from nonuse by the general public."

---

1.  O–18–04 & O–20–04.

2.  Per the attached deeds and plats in the record.

3.  In a related action involving Nash and Beck Road (92–CI–01299), the Campbell Circuit Court ruled in an Order entered June 9, 1994, that Beck Road was not a "county road" but was a "public road" of sufficient width to access the Nash property, and followed the

4.  Per the Master Commissioner's report which was adopted by the court in 92–CI–01299.

access and utility easement through the Torline property.

## C. THE COUNTY ORDINANCES

The County passed two ordinances in August 2004, to address divisions of land for agricultural purposes, Ordinance Nos. O–18–04 and O–20–04. The first, O–18–04, requires an owner wishing to divide and sell land for agricultural purposes (or otherwise exempt from subdivision regulations) to submit a written notarized affidavit to an agent for the Campbell County Fiscal Court, stating the proposed primary use of the land and that the land will not be used for residential building development for sale or lease to the public. The ordinance also requires the plat or deed contain a similar restriction or statement. The second ordinance, O–20–04, designates the Campbell County and Municipal Planning and Zoning Commission (Planning Commission) as its designated agent and its review board.

## III. THE ISSUES

The property owners presented the deeds for recording with the Campbell County Clerk's Office. The Clerk's Office would not accept the deeds for recording until approved by the Planning Commission, and the Planning Commission would not approve said deeds because of alleged deficiencies in qualifying for the agricultural exception. Two issues arose due to this impasse. The first issue is a procedural issue (which also affects the County Clerk)—who has the burden to show the

proposed conveyance is not subject to the subdivision regulations because of the agricultural supremacy clause. Does the property owner have to show the proposed conveyance is exempt from subdivision regulations; or, does the County have the burden to have a conveyance voided for not complying with the subdivision regulations? The second issue is a legal issue on uncontested facts—whether the proposed conveyances in question are subdivisions subject to subdivision regulations; or, are the proposed conveyances exempt from subdivision regulations due to the agricultural supremacy clause or exemption of KRS 100.111(22), KRS 100.111(2), and KRS 100.203(4)?

## IV. ANALYSIS

### A. THE PROCEDURAL ISSUE

■ Any authorized political subdivision that wants to adopt zoning regulations (land use) and subdivision regulations (divisions of land) must comply with Chapter 100 of the Kentucky Revised Statutes (Planning and Zoning). "When the state has preempted a field, the city must follow that scheme or refrain from planning."[5] Under KRS 100.273(1), the planning commission has initial authority to adopt subdivision regulations.[6] Those counties that do not have planning commissions can adopt subdivision regulations through the fiscal court.[7] KRS 67.083(3)(k) does authorize fiscal courts to adopt planning, zoning, and subdivision regulations "according to the provisions of KRS Chapter 100[.]"

---

**5.** *Sebastian–Voor Props., LLC v. Lexington–Fayette Urban County Gov't*, 265 S.W.3d 190, 193 (Ky.2008) (quoting *Bellefonte Land, Inc. v. Bellefonte*, 864 S.W.2d 315, 317 (Ky.App. 1993)).

**6.** *But see Sladon v. Shawk*, 815 S.W.2d 404, 406 (Ky.App.1991) for a suggestion that subdivision regulations must also be adopted by

the legislative body. However, KRS 100.328(2) (formerly KRS 100.334(1)) appears to be referencing the comprehensive plan and zoning regulations in KRS 100.201, and not the subdivision regulations of KRS 100.273(1).

**7.** KRS 100.273(2).

■ Subdivision plats are approved by the planning commission as a ministerial function to insure compliance with the subdivision regulations.[8] KRS 100.111(22) exempts, from the definition of "subdivision", divisions of land which are restricted to agricultural uses and not involving a new street. Agricultural uses in both the zoning ordinances and in subdivision regulations are defined in KRS 100.111(2), and for purposes herein, usually require a parcel of at least five contiguous acres. Under the Campbell County Ordinances in question,[9] a land owner desiring to divide and convey parcels for agricultural purposes must make an application to the "Campbell County Planning And Zoning Commission And/Or Review Board", with evidence that the proposed conveyance is restricted to agricultural uses and that the land will not be used for residential building uses, to prove entitlement to the agricultural exemption from the subdivision regulations. We believe this approach is the reverse of the statutory scheme—which requires subdivision approval by a planning commission, but does *not* require planning commission approval of conveyances which do not involve subdividing. The ordinances in question require the property owners prove a negative to the planning commission before property can be divided or conveyed for agricultural uses. To the extent the ordinances in question require *planning commission approval* before property can be divided into agricultural parcels, we agree with the circuit court that said ordinances are void, although not because they violate the Constitution, but because they conflict with the statutory wording and scheme of KRS 100.111(22), KRS 100.111(2), KRS 100.203(4),[10] and KRS 100.273 *et seq.*, as well as KRS 413.072, which prohibits local regulations on agricultural uses. To the extent the *ordinances* sought to amend the subdivision regulations, they are void because the adoption or amendment of subdivision regulations are functions of the planning commission, at least initially.[11]

■ The fact that a property owner does not need planning commission approval of *divisions* of land under the agricultural exemption of KRS 100.111(22), KRS 100.111(2), and KRS 100.203(4), does not mean that any deed (of a proposed agricultural division of land) that recites that it is exempt from planning commission approval under said statute(s) is automatically entitled to be recorded. There is no presumption under the statutes that tracts of five or more acres are for agricultural use.[12] A planning commission that believes a division of land is not exempt from its review and approval (under KRS 100.111(22) and KRS 100.111(2)) can seek injunctive relief or otherwise litigate.[13] In the event land is sold in violation of the subdivision regulations, the attempted conveyances are void.[14]

8. *Kelly v. Cook*, 899 S.W.2d 517, 519 (Ky.App. 1995). *See also* KRS 100.277; KRS 100.281(1); *Snyder v. Owensboro*, 528 S.W.2d 663 (Ky.1975).

9. O–18–04 & O–20–04.

10. KRS 100.203(4) limits local zoning regulations for land used for agricultural purposes.

11. *See* KRS 100.273(1); *Sladon*, 815 S.W.2d at 406.

12. *See Green v. Bourbon County Joint Planning Comm'n*, 637 S.W.2d 626, 629 (Ky. 1982).

13. *See* KRS 100.291, which specifically authorizes a planning commission to seek injunctive relief to stop any type of construction by a subdivider or landowner, where a subdivision regulation has been violated.

14. KRS 100.277(3).

■ Also, a county clerk has the obligation to record recordable deeds[15] and plats[16] (within a reasonable time) after they are tendered at the county clerk's office.[17] KRS 100.277 requires all subdivisions have planning commission approval and no plat or conveyance of a subdivision of land shall be recorded until approved by the planning commission. Any such instrument of transfer not receiving planning commission approval is void, and shall not be recorded.[18] A proposed transfer under the agricultural exemption of KRS 100.111(22) would have no stamp of approval, because such transfers are exempt from planning commission approval. But, without a review by the planning commission, how is a clerk to know whether a proposed division is a subdivision needing planning commission approval, or an agricultural division which is exempt from planning commission approval? That is the clerk's call, and if the clerk has a question about the validity or recordability of a deed, he/she can always request a review of the tendered documents by private counsel, the county attorney, or even the planning commission. An owner whose tendered divisions is refused recording by a county clerk may bring a declaration of rights action under KRS 418.040, which was done in this case.

## B. THE LEGAL ISSUE

■ The legal issue in this case is whether the County Clerk erred in not recording the Nash and Torline proposed divisions because the divisions were for agricultural purposes and thus exempt from the subdivision regulations by virtue of KRS 100.111(22), KRS 100.111(2), and KRS 100.203(4). The consolidated cases were submitted to the trial court on summary judgment motions. The trial court saw no genuine issue of material fact in this case and only issues of law.

■■ "The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law."[19] We agree that while there may be some disagreement of the facts, the disagreements are more on the legal conclusions which are drawn from those facts. Issues of law are reviewed de novo by a reviewing court.[20]

The United States Supreme Court decided in 1926 that individual property rights in land were not absolute, that the state and/or communities could exercise their police powers and regulate land use and zoning if the regulations were reasonably related "to the public health, safety, morals, or general welfare."[21] In 1966, the Kentucky General Assembly passed comprehensive planning and zoning statutes, including the authority to adopt subdivision regulations, compiled in Chapter

15. For an instrument to be recordable, see KRS 382.335 for general information to be included, and the additional requirements of KRS 382.290 and KRS 382.430. *See also Fordson Coal Co. v. Wells*, 245 Ky. 291, 53 S.W.2d 564, 566 (1932) (noting that a county clerk should not record nonconforming deeds).

16. KRS 100.283.

17. KRS 382.300.

18. *See generally* KRS 382.300; KRS 100.277(3).

19. *Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49 (Ky.2002).

20. *See Hill v. Thompson*, 297 S.W.3d 892, 895 (Ky.App.2009).

21. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (citations omitted).

100 of the Kentucky Revised Statutes.[22] KRS 100.201, 100.203, and 100.207, which are enabling statutes for cities, counties, and urban-county and metro governments to consider and adopt land use regulations (zoning regulations), specifically exempt parcels used for agricultural purposes.[23] Agricultural uses include a dwelling for the agricultural user and family.[24] Agricultural uses are, however, subject to regulations on setbacks; use of flood plains; mobile homes; and certain commercial horse uses, such as riding stables.[25]

■ The "agricultural supremacy clause" is not a specific clause in the text of Chapter 100 of the Kentucky Revised Statutes, but a doctrine or thread that is woven throughout the Chapter. When the Chapter authorizes zoning regulations, KRS 100.203(4) exempts land used for agricultural purposes (whether or not in an agricultural zone) from most regulations on the *use* of land. When the Chapter authorizes subdivisions of land, KRS 100.111(22) exempts land used for agricultural purposes not involving a new street from regulations on *divisions* of land. KRS 100.111(2) defines "agricultural use" which, in most cases, requires at least five contiguous acres to be considered an agricultural use. Together, these statutes create the "agricultural supremacy clause" or an agricultural exemption doctrine which takes agricultural *uses* outside the jurisdic-

tion of zoning ordinances and agricultural *divisions* outside the jurisdiction of subdivision regulations, although not outside of planning or the master or comprehensive plan.[26] KRS 413.072 (commonly known as the Right to Farm Act) also reflects the agricultural supremacy doctrine by specifically prohibiting any city or county from adopting, and even voids, ordinances which would regulate farming through zoning or other regulations.

*Grannis v. Schroder*[27] discussed the agricultural supremacy clause in terms of agricultural uses of land. *Divisions* of land for agricultural uses involve some overlapping property rights. Divisions of land involve ownership rights—the right to buy and sell land.[28] KRS 100.273 authorizes planning commissions and fiscal courts (where there is no planning commission) to adopt regulations for subdividing land,[29] that is, *dividing* property or parcels into smaller parcels for resale. But specifically exempt from these subdivision regulations are *divisions* of land consisting of five or more contiguous acres, which are to be used for agricultural purposes not involving a new street.[30]

The legal issue in the cases before us is whether the proposed conveyances must have planning commission approval, or are they exempt from subdivision regulations under the agricultural exemption of KRS

22. 1966 Ky. Acts ch. 172, § 31.

23. *See* KRS 100.203(4).

24. KRS 100.111(2)(a).

25. *See* KRS 100.203(4).

26. "This 'agricultural supremacy clause' (KRS 100.203(4)) does not simply make a farm a legal nonconforming use but takes it outside the zoning ordinances' jurisdiction, although not outside the master or comprehensive plan." *Grannis v. Schroder,* 978 S.W.2d 328, 330 (Ky.App.1997).

27. *Id.*

28. *See City of Louisville Bd. of Zoning Adjustment v. Gailor,* 920 S.W.2d 887, 888–89 (Ky. App.1996).

29. *See Kelly,* 899 S.W.2d at 518–19 for some justifications for subdivision regulations.

30. *See* KRS 100.111(2) & (22); KRS 100.203(4).

100.111(22), KRS 100.111(2), and KRS 100.203(4)? Three things must exist for the proposed *divisions* to be exempt from subdivision regulations under the agricultural supremacy clause. First, the *use* of the parcel(s) conveyed out must be restricted to agricultural uses.[31] Second, usually, the parcel(s) being conveyed out, as well as the remaining parcel, must contain five or more contiguous acres.[32] Third, the original parcel, and those conveyances out, must not involve the construction of a new street (all parcels must have frontage on an existing street).[33]

Neither the Nash nor Torline proposed conveyances meet the first prong. The Nash proposed deeds with their attached plats of the five Nash tracts contain the restriction or notation on the plat that "[t]he land shown on this plat is not to be used for residential building development for sale or lease to the public." For a deed or plat to qualify under KRS 100.203(4), it must restrict or limit the use of that conveyed to agricultural uses, and nothing more. The Torline deeds attach a plat which contains an *unsigned* restriction for agricultural use. Both Nash and Torline could make minor notations to restrict the property to agricultural uses to satisfy the first prong of the test, but at the time tendered, neither has met the first prong and the County Clerk properly refused to record the conveyances.

The second prong of the test requires, usually, that the conveyances for agricultural uses result in tracts of at least five contiguous acres.[34] Both Nash and Torline satisfy this prong of the test, as the conveyances out and the remaining parcels all contain five or more contiguous acres.

■ The third prong to the agricultural division exception to subdivision regulations is more complicated. KRS 100.111(22) requires a division of a parcel for agricultural purposes to not involve a new street. KRS 100.111(20) defines a street as "any vehicular way." At first blush, the definition of street appears to cover any federal, state, county, municipal, and even private street or way. That definition would include driveways, private easements, gated communities, access roads, service roads, parking lot roads, mall roads, and even coal haul roads, etc. Defining a "street" as "any vehicular way" in KRS 100.111(20) contains a latent ambiguity: it is too broad. Fortunately, common law has injected the concept of a public use—that the vehicular way be open to the public—to be considered a street. This would exclude vehicular ways over private property, like driveways, private easements, gated communities, access roads, service roads, parking lots, haul roads, etc.[35]

■ Open to the public means an intention by the owner that the way be used presently or in the future for such a public purpose.[36] If an owner can legally put a gate or barrier, like a chain, across a vehicular entrance to his property, the vehicular way is not open to the public in the

---

31. *See* KRS 100.111(2) & KRS 100.203(4).

32. KRS 100.111(2). Small farm wineries may contain less than five acres. KRS 100.111(2)(b).

33. *See* KRS 100.111(22).

34. KRS 100.111(2). Small farm wineries may contain less than five acres. KRS 100.111(2)(b).

35. *See Henry Fischer Builder, Inc. v. Magee,* 957 S.W.2d 303, 305–06 (Ky.App.1997) for a litany of ways to dedicate or open a street.

36. *See* 3 AMERICAN LAW OF PROPERTY § 12.132, at 473 (A. James Casner ed.1952).

sense that the owner of the fee can regulate the public use.[37] When the owner intends to subject his rights in the property to the public use, it is open to the public and we call that a dedication.[38] Dedication, or open to the public, may be accomplished in a number of ways. Where the vehicular way is being established by a state, county, or local government, there may be a *voluntary conveyance* by deed of an easement or of a fee of the underlying right of way,[39] or there may be an *involuntary taking* through eminent domain,[40] neither of which is involved in the case herein.

Dedication may also be made by private land owners. "Most of the public streets and alleys in [existing] cities have been created by dedication in the platting and development of various city subdivisions." [41] Such dedications may result from compliance with a statutory [42] or regulatory scheme, like subdivision regulations, which contain street specifications, dedications, and in some cases, acceptance of maintenance by the local government.[43] A private land owner may also be *presumed* to have made a dedication of land for a public way.[44] This is creating a public highway by prescription. The theory behind a dedication by prescription holds that the long continued use of a highway by the general public rests upon a presumption of a lost grant, arising from the continuous adverse use of land (with the same elements of adverse possession).[45] Similar to a right of way by prescription that presumes dedication by a private land owner (after a passage of time) is a dedication by estoppel which does not have set time limits, but is based on promises and reliance thereon.[46]

The Nash proposed conveyances do not meet the third prong of the above test. The Nash property does front on Beck Road, which is a public road although not maintained by the County.[47] The statutory requirement for a street under KRS 100.111(20) is that it be a public vehicular way. It is not necessary that the road was "accepted" for maintenance as most subdivision regulations now require. Most "county roads" were "public roads" before they were accepted for maintenance as county roads.[48] The remaining parcel with the house will retain the road frontage. However, none of the other four proposed

**37.** *See* 2 AMERICAN LAW OF PROPERTY § 9.50, at 484 (A. James Casner ed.1952); *Cole v. Gilvin*, 59 S.W.3d 468 (Ky.App.2001).

**38.** *Id.* at 473; *see also* 2 AMERICAN LAW OF PROPERTY § 9.50, at 482.

**39.** *See id.*

**40.** *See* KRS Chapter 416.

**41.** 2 AMERICAN LAW OF PROPERTY § 9.50, at 482.

**42.** *See, e.g.,* KRS 82.400 (procedure for dedicating public way or easement); KRS Chapter 178 (county roads).

**43.** *See* KRS 100.273 *et seq.*; KRS 82.400.

**44.** KRS 82.400(3) contains a rule of evidence for use in common law dedications by prescription. *Henry Fischer Builder, Inc.*, 957 S.W.2d at 306.

**45.** *See* 2 AMERICAN LAW OF PROPERTY § 9.50(c), at 483; *Louisville & N.R. Co. v. Engle*, 278 Ky. 576, 129 S.W.2d 133, 134 (1939).

**46.** *See* KRS 82.400(3); *Bluegrass Manor v. Mall St. Matthews Ltd. P'ship*, 964 S.W.2d 431, 433 (Ky.App.1998); *Henry Fischer Builder, Inc.*, 957 S.W.2d at 306.

**47.** There may be a question as to whether Indian Trace Road or Beck Road has been abandoned by the County, but that decision is not relevant to the case herein today. *See Sarver v. Allen County ex rel. Fiscal Court*, 582 S.W.2d 40 (Ky.1979); *Blankenship v. Acton*, 159 S.W.3d 330 (Ky.App.2004).

**48.** *Sarver*, 582 S.W.2d at 41.

parcels cut from the original parcel front on an existing street. Instead, these four parcels would have access by way of the private driveway and its gravel extension. Because the Nash property does have road frontage on pre-existing Beck Road, Nash could subdivide the property, but said subdivision would have to comply with the current subdivision regulations, including the specifications for new county streets, as well as dedication to, and acceptance by the county.

None of the Torline proposed conveyances can meet the third prong of the test—not involving a new street. The Torline property is landlocked. That is, the original Torline property has no frontage on *any* street. Instead, access to the Torline property is by way of a private easement over a servient parcel, with a driveway or private road constructed thereon. Although such parcels can continue to be bought and sold, the Torline parcel (the dominant estate) can never be divided further without frontage on an existing street and without compliance with the current subdivision regulations at Torline's expense.[49] That usually means the private easement will have to be developed into a street (according to the subdivision specifications), dedicated, and accepted for maintenance by the local governing entity. Once the parcel is fronting on a public street, it can then be divided. However, again we must caution that the internal divisions and streets must comply with the current subdivision regulations.

## V. CONCLUSION

The County Clerk did not err in not recording the tendered Nash and Torline conveyances because they were in fact subdivisions which needed planning commission approval. The trial court did not err to the extent it found the two county ordi-

nances in question void, although we believe for different reasons. The Court of Appeals erred in holding the two county ordinances were valid, but did not err in remanding the case to the trial court for entry of summary judgment in Appellees' favor, but again, for different reasons. With our decision, the remaining issues become moot. Therefore, we affirm in part and reverse in part, remanding to the trial court with instructions to enter summary judgment in favor of the Appellees.

MINTON, C.J.; CUNNINGHAM, SCOTT, and VENTERS, JJ., concur. NOBLE, J., concurs in part and dissents in part by separate opinion in which Abramson, J., joins.

NOBLE, J., concurring in part and dissenting in part:

The majority opinion asserts that the county clerk is "caught in the middle" of the question in this case: should the clerk accept deeds for recording that divide farm property into smaller divisions containing at least five acres each when their stated purpose is for agricultural use? I do not believe the result reached by the majority resolves this dilemma, because the majority requires the county clerk to seek outside advice on the matter, with the county attorney or some other lawyer, and then make the call whether to record the deeds. The "middle" just got worse for the county clerk who may now be facing personal liability for choosing wrongly.

As the majority acknowledges, under the agricultural exemption of KRS 100.111(22), 100.111(2) and 100.203(4), property owners do not need planning commission approval to divide their farmland, so long as it continues an agricultural purpose and does not involve a new street. Here, Nash stated in his deeds that the property was not to be used for "residen-

---

**49.** *See Kemper v. Cooke,* 576 S.W.2d 263 (Ky. App.1979).

tial building development for sale or lease to the public." At the time of division, the land was used as farmland. The new deeds restricted residential development. By process of elimination, the language means that the property use is intended to stay as farmland.

As the majority also acknowledges, a county clerk has the *obligation* to record recordable deeds within a reasonable time. Nothing about the proffered deeds made them unrecordable. However, because there were ordinances in place that required prior approval and decision-making by the planning commission as to the type of deed as either agricultural or subdivision, the clerk did not immediately record the deeds here. I agree with the majority that these ordinances are not proper, and should be set aside. However, once they are no longer considered, the clerk is back in the "middle" of decision-making again.

If a deed is on its face recordable, on what authority can a clerk refuse to record it? This is not the county attorney or an outside attorney's call. It is, in fact, prejudging a case without that case ever having a day in court. Such a delay can no doubt prejudice the land owners who wish to go forward with the sale of their mini-farms.

Instead, the majority shows greater concern over the view of a planning commission that this might actually be a subdivision, subject to subdivision regulation by the planning commission, than it does the immediate property owners. In so doing, the county clerk remains squarely "in the middle."

While I acknowledge that landowner's rights are not "supreme" in regard to their real property, I do not believe the law supports elevating a possibility that could impact the planning commission over the present and immediate rights of the landowners. Since the clerk is required to record a "recordable" deed, these deeds should have been recorded. The planning commission then can be diligent in reviewing recent property recordations, and if there may be a problem, seek injunctive relief. This takes the county clerk out of the middle and allows him or her to just do their job. A landowner should not have to sue to do what he is entitled to do.

Since the agricultural exemption ·clearly takes agricultural land use out of the review by the planning commission by making divisions such as these exempt from subdivision regulation, the burden of establishing a different use should not be on the landowner; the presumption should be that the use is agricultural.

Here, the land was referenced in the deeds as not for residential purposes, but to continue as agricultural. They all contained five or more acres as statutorily required, and no new public streets were necessary to construct as adequate easements existed to reach all the properties. The deeds were on their face recordable. Except for the ordinances in question, there was no reason for the county clerk to hesitate to record the deeds. Had that happened, the county then had ample opportunity to dispute the accuracy of any of those factors in court, rather than through outside consultations that do not carry the weight of law.

Consequently, while I agree with the majority that the ordinances were improper and should be set aside, I dissent from the process the majority endorses that unduly leaves the clerk dangling "in the middle." I would reverse and order the deeds be recorded in accordance with this opinion. The county could then take any steps it deems necessary.

ABRAMSON, J., joins.