RENDERED: FEBRUARY 24, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2021-CA-0668-MR

RITA R. WHITE AND MARGARET
SUE PARIS                                                          APPELLANTS

v.               APPEAL FROM JEFFERSON CIRCUIT COURT
                 HONORABLE DEANA C. MCDONALD, JUDGE
                 ACTION NO. 19-CI-503731

TIARA M. FOWLER AND PHILLIP
FOWLER                                                              APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: DIXON, LAMBERT, AND McNEILL, JUDGES.

DIXON, JUDGE: Rita R. White and Margaret Sue Paris (collectively "the grandparents") appeal the Jefferson Circuit Court's order, entered March 23, 2021, denying them de facto custodian status. After careful review of the briefs, record, and law, we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Tiara and Phillip Fowler are the parents of J.F. and T.F., born 2012 and 2013, respectively. On December 16, 2019, White and Paris, the children's maternal grandmother and great-grandmother, filed a petition jointly seeking custody, parenting time, and/or visitation. A hearing on custody was held February 19, 2021, during which the grandparents, the Fowlers, and the children's former kindergarten teacher testified. While the grandparents maintain that the children have predominantly resided with them since birth, they limited their claim of de facto custodianship to August 1, 2016, through early January 2019. This timeframe includes a period – September 2017 to November 2018 – when Tiara and the children resided fulltime with them.

Per the grandparents' testimony, beginning August 1, 2016, they met the children's daily needs by bathing them, dressing them, cooking their meals, helping with homework, corresponding with their schools, and providing general care. They also assisted with school projects; helped prepare the oldest child for kindergarten; enrolled the youngest child in an early learning program; attended school activities, extracurricular events, a parent teacher conference, and all of the children's medical appointments, which they also scheduled; and took the children on recreational outings throughout the year. Jointly, they paid for the children's clothes, school supplies and activities, uniforms, extracurriculars, recreational

outings, and holiday and birthday celebrations, as well as the oldest child's pre-kindergarten tuition. The grandparents assert that Tiara rarely bought anything for the children and never reimbursed them for their financial outlays despite their repeated requests.

In support, the grandparents submitted into evidence: a calendar purporting to document the children's day-to-day lives with the grandparents; photographs from the relevant time period showing the children with the grandparents, the children engaging in various activities, and the children's rooms and play areas in the grandparents' house; detailed summaries of purchases made for the children with receipts; and three letters sent via mail and certified mail dated August and September 2016, from Margaret Sue to the Fowlers expressing her frustration with their financial support and care of the children.

The grandparents admit that Tiara provided health insurance for the children and that she attended all of their medical appointments, some of their activities, and at least one parent teacher conference. They also acknowledge that Tiara saw the children, with Margaret Sue estimating that Tiara could have gone a week without seeing them, but never a month, and Rita estimating it was maybe twice a week for an hour or so at the house. The grandparents report that Phillip was routinely absent from the children's lives.

Denying that the children ever stayed fulltime with the grandparents, Tiara explained that, during the week, her youngest child lived primarily with her and the oldest split his time between the two households. With the exception of one week-long vacation with friends, Tiara never went more than three days without seeing the children. The Fowlers also testified that the children spent time with Phillip which, pursuant to the divorce decree, was set at one day during the week and every other weekend. Tiara acknowledges that the grandparents routinely cared for the children during weekdays, when they were not in school or daycare, and weekends while she worked.

Tiara asserts she has always been active in her children's lives and submitted photos of her and the children during the disputed period. She attended most of their practices, where she occasionally worked the concession stand or helped with coaching; she took the children to the amusement park, the zoo, baseball games, and the circus; and she attended all of their games, school plays, and parent teacher conferences. The children's kindergarten teacher, who was involved with the family during the 2017-2018 school year, reported that Tiara came to a Mother's Day event with the oldest child, attended two conferences, was responsive to issues, and chaperoned two field trips.

Tiara opined that her parenting efforts were often stymied by the grandparents who rejected the items she bought for the children and insisted upon

packing the children's backpacks, doublechecking the homework with which Tiara assisted, and having the final say regarding the children's outfits. Tiara believes the grandparents manipulated both her and the children by threatening to withdraw their assistance if things were not done their way and biasing the children against her home. Tiara concedes that at times she acquiesced to the grandparents' wishes to keep peace and retain their help.

As for finances, per the Fowlers' testimony, Phillip regularly paid child support which Tiara – whose own wages were being garnished as a result of bankruptcy proceedings – used to provide food, haircuts, and daycare for the children. An exhibit purporting to document these transactions was admitted as evidence. Tiara also permitted Rita to claim one of the children as a tax deduction as a partial repayment for a family trip to Disney. She admits that she only paid the grandparents $300 in rent and that she did not intend to reimburse Margaret Sue for pre-kindergarten as she disputes that she ever agreed to be financially responsible for the expense.

On March 23, 2021, the court entered an order finding that the grandparents had not satisfied their burden of proof to be designated de facto custodians pursuant to KRS[1] 403.270(1). After their subsequent motion to alter,

---

[1] Kentucky Revised Statutes.

amend, or vacate the court's order pursuant to CR[2] 59.05 was denied by order entered May 7, 2021, the grandparents timely brought this appeal.

## STANDARD OF REVIEW

We review a court's findings of fact under the clearly erroneous standard and will only reverse if the findings are not supported by substantial evidence. CR 52.01; *Black Motor Co. v. Greene*, 385 S.W.2d 954, 956 (Ky. 1964). We review the court's legal conclusions de novo. *Nash v. Campbell County Fiscal Court*, 345 S.W.3d 811, 816 (Ky. 2011).

## ANALYSIS

As an initial matter, the Fowlers request that we exercise our discretion and strike the appellant brief as non-compliant for its failure to include the required statement, with reference to the record, demonstrating that the arguments raised therein are preserved for appeal. RAP[3] 32(A)(4); RAP 31(H)(1).[4] Given the important nature of child custody issues, we have opted to retain the brief.

---

[2] Kentucky Rules of Civil Procedure.

[3] Kentucky Rules of Appellate Procedure.

[4] We note that the current rule, which was enacted after briefing was completed in this case, is identical in substance to the former rule, CR 76.12(4)(v).

We turn now to the merits of the appeal. KRS 403.270 (2018)[5] provides in pertinent part:

> (1)(a) "[D]e facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for . . . a period of one (1) year or more if the child is three (3) years of age or older[.]
>
> (b) . . . Once a court determines that a person meets the definition of de facto custodian, the court shall give the person the same standing in custody matters that is given to each parent[.]

The grandparents first argue that the court applied an erroneous burden of proof. In its order denying CR 59.05 relief, the court asserted that, "[w]hile not specifically stated in the statute, it is presumed that parents fill the roles of primary caregiver and financial supporter. Thus, [the grandparents] have the burden of rebutting that presumption." The grandparents maintain that the articulated standard is not supported by the law, demonstrates bias, and deprived them of a fair hearing. In support, we are referred to two cases that pre-date KRS 403.270 and, as admitted by the grandparents, deal with the separate legal issue of waiver of custody, as well as an unpublished opinion that does not address the question at issue.

---

[5] The statute was amended in 2021 after these proceedings commenced.

While we do not endorse the court's summation of the law, contrary to the grandparents' contention, it is not without support. In applying KRS 403.270, our courts have consistently recognized that parents have a superior, constitutionally protected right to the care, custody, and control of their children. *Brumfield v. Stinson*, 368 S.W.3d 116, 118 (Ky. App. 2012); *see also Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212, 31 L. Ed. 2d 551 (1972). Attendant with these rights, the common law "imposes a duty of responsibility on parents for the care, nurture[,] and upbringing of their children." *Smothers v. Baptist Hosp. E.*, 468 S.W.3d 878, 883 (Ky. App. 2015). Before a purported de facto custodian may be afforded the same standing as a parent, we have held that "the court must determine that the biological parent has abdicated the role of primary caregiver and financial supporter of the child for the required period of time. In other words, one must literally stand in the place of the natural parent to qualify as a de facto custodian." *Brumfield*, 368 S.W.3d at 118 (internal quotation marks and citations omitted). As the court's statement is consistent with these principles and does not bias the grandparents' position, we find no error. Moreover, as the court cited and applied the correct standard in the underlying order on appeal, the challenged language appearing only in the order denying CR 59.05 relief, we conclude any error was harmless. CR 61.01.

Next, the grandparents raise various challenges to the court's findings of fact regarding the support and care of the children; however, as we believe the latter is the determinative factor, we confine our analysis to that issue and do not reach their remaining arguments. Though the court acknowledged that the grandparents provided significant care to the children, it ultimately found that, through Tiara's consistent actions, the Fowlers had not abdicated their role as the primary caregivers to the children. The grandparents concede this is consistent with the Fowlers' testimony but contend the court's reliance thereon is erroneous given the wealth of evidence, both testimonial and documentary, which they presented.

It is true that a court's discretion to judge credibility is not boundless and its determination will not be upheld if the testimony at issue is refuted by incontrovertible physical evidence or is otherwise inconceivable. *See Potts v. Commonwealth*, 172 S.W.3 345, 349-51 (Ky. 2005). However, the limit of a judge's discretion is not implicated by the ordinary concerns of impaired perception, a motive to fabricate, or disputed facts. *Id.* Here, contrary to the grandparents' assertion otherwise, the court's decision falls within the latter category.

Though the grandparents appear to have made every effort to document the children's lives through calendars, pictures, and letters, this

evidence – which was prepared or interpreted by the grandparents and is neither impartial nor incontrovertible – is not of sufficient caliber to overcome the court's determination of credibility. And, as explained by the Supreme Court of Kentucky, "[r]egardless of conflicting evidence, the weight of evidence, or the fact that the reviewing court would have reached a contrary finding, due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (internal quotation marks and citations omitted). Accordingly, we find no error.

Finally, given the above, we need not reach the issue of whether KRS 403.270 permits the grandparents to jointly seek de facto custodian status.

**CONCLUSION**

Therefore, and for the forgoing reasons, the order of the Jefferson Family Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Dean H. Sutton
Louisville, Kentucky

BRIEF FOR APPELLEES:

Allison S. Russell
Louisville, Kentucky

John H. Helmers, Jr.
Louisville, Kentucky