RENDERED:  JANUARY 8, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0228-MR


LARRY ELKINS; CALLOWAY
COUNTY FISCAL COURT; DON
CHERRY; EDDIE CLYDE HALE;
JOHNNY GINGLES; KENNETH
IMES; STEVE LAX; AND TIM TODD                          APPELLANTS


APPEAL FROM CALLOWAY CIRCUIT COURT
v.     HONORABLE TIMOTHY KALTENBACH, SPECIAL JUDGE
ACTION NO. 18-CI-00337


WESTERN SHORES PROPERTY
OWNERS ASSOCIATION, INC.                                APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, DIXON, AND TAYLOR, JUDGES.

DIXON, JUDGE:  Larry Elkins, Calloway County Fiscal Court, Don Cherry,

Eddie Clyde Hale, Johnny Gingles, Kenneth Imes, Steve Lax, and Tim Todd

("County Defendants") appeal from the order denying their motion to dismiss the

claims against them in their individual capacities, and the order denying their

motion to reconsider same, entered by the Calloway Circuit Court on August 16, 2019, and January 21, 2020, respectively. After careful review of the briefs, record, and the law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

This appeal stems from the failure to complete roadways in the Western Shores Subdivision. Its roadways are governed by the Subdivision Regulations of Calloway County, Kentucky, ("Regulations") effective March 1, 2003.[1] Prior to approving the final plat, Calloway County Judge Executive Elkins required Kentucky Land Partners, LLC ("KLP")—developer of Western Shores Subdivision—to post a surety bond, ensuring completion of the subdivision's roadways.

## KLP Bond

**Original Bond: 2006-2007.** On April 21, 2006, KLP, as principal, Westchester Fire Insurance Company, as surety, and the Calloway County Judge Executive, as obligee, entered a bond of $3,031,382.75 for "**Road construction, paving, surveying and engineering at Western Shores Subdivision**." (Emphasis

---

[1] County Defendants have alerted our Court via separate motions that Calloway County Fiscal Court Ordinance No. 2020-0916-B, which amends and clarifies these regulations, was enacted September 16, 2020. However, new material not considered by the trial court is not admissible on appeal and should not be considered by our Court. Consequently, County Defendants' motions requesting the record be supplemented with this ordinance and that they be allowed to file a supplemental brief regarding same are denied by separate orders of this Court entered contemporaneously with this Opinion. Appellee's motion to file a responsive supplemental brief is, likewise, denied.

in original.)  The bond provided, "Any action under this Bond by the Obligee must be instituted before the expiration of one (1) year from the date on which the bond was executed."

**First extension:  2007-2008.**  Construction of the subdivision's roadways was not fully accomplished within the year contemplated under the original bond.  Consequently, on April 21, 2007, the same parties executed a change rider to the bond which reduced the bond limit to $1,012,000 to reflect the roadwork that was done during the period covered by the original bond.  A continuation certificate was executed the same date, extending the bond for one year.

**Second extension:  2008-2009.**  Construction of the subdivision's roadways was not finished within the year the bond was extended.  A subsequent change rider was executed, effective April 21, 2008, which reduced the bond limit to $983,043 to reflect the roadwork done during the period covered by the previous extension of the bond.  Presumably, a corresponding continuation certificate was executed, extending the bond for another year.

**Third extension:  2009-2010.**  The construction of the subdivision's roadways was still not completed within the second year the bond was extended.  In fact, it is unlikely that any roadwork was completed during the year's extension as the next extension of the bond was for the same amount.  A continuation

certificate was executed, effective April 21, 2009, extending the bond for another year.

**Bond "returned."** On April 13, 2010, Elkins wrote a letter to KLP requesting the bond be increased to $1,500,000 due to "the increase in asphalt and related costs." The letter stated the current bond amount was "insufficient to guarantee completion of the project." However, it appears no change rider was executed to increase the bond pursuant to this request and no continuation certificate was executed to extend the bond. Therefore, the bond expired on April 21, 2010. Elkins noted on the April 21, 2007, change rider that "Bonds returned to John [Oliphant]" of KLP. Elkins' handwritten notation was dated June 24, 2010.

### Litigation and Procedural History

On February 23, 2018, KLP entered a special warranty deed, conveying the unfinished streets within Western Shores Subdivision to the Western Shores Property Owners Association, Inc. ("WSPOA"). On September 14, 2018, WSPOA filed the complaint herein against County Defendants, KLP, and KLP's directors. WSPOA claims that "[b]ecause KLP exited the Development without completing all improvements required to be done and because the County failed to properly bond the roads as mandated by County Regulations, the roads are incomplete and the County Defendants refuse to accept the roads under their jurisdiction for regular maintenance." WSPOA asserted claims of negligence and

requested a writ of mandamus and declaratory judgment against County Defendants; it also lodged claims of breach of fiduciary duties and requested punitive damages against KLP and KLP's directors.

On October 23, 2018, County Defendants moved the trial court to dismiss WSPOA's claims against them, asserting they are entitled to absolute legislative immunity, sovereign immunity, and qualified official immunity. County Defendants further contended WSPOA's complaint was barred by the Claims Against Local Governments Act, WSPOA lacked standing to sue upon the bond, and a writ of mandamus was an inappropriate remedy. On February 7, 2019, County Defendants filed a supplemental memorandum of law in support of their motion to dismiss, asserting WSPOA's claims were barred by the statute of limitations.

On August 16, 2019, after the matter was fully briefed and a hearing conducted, the trial court entered a memorandum and order concerning County Defendants' motion to dismiss. The trial court dismissed the negligence claims against County Defendants in their official capacities as barred by sovereign immunity. However, the trial court did not dismiss the negligence claims against County Defendants in their individual capacities, finding they were not entitled to qualified official immunity. The trial court further found the claims for declaratory judgment and mandamus against County Defendants were not barred by sovereign

immunity. On August 22, 2019, County Defendants moved the trial court to reconsider its order, but on January 21, 2020, following a full briefing of the matter, the trial court denied the motion to reconsider. This appeal followed.

## STANDARD OF REVIEW

A trial court should only grant a motion to dismiss if "it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Benningfield v. Petit Envtl., Inc*., 183 S.W.3d 567, 570 (Ky. App. 2005) (citation omitted). In considering the motion to dismiss, the truth of the allegations in the amended complaint is assumed, and the pleadings are to be liberally construed in a light most favorable to the plaintiff. *Id*. This determination requires no factual findings and is purely a question of law. *Id*.

## QUALIFIED OFFICIAL IMMUNITY

County Defendants filed an interlocutory appeal, arguing the negligence claims against them in their individual capacities are barred by qualified official immunity. This appeal is properly before us because an order denying a substantial claim of qualified official immunity is immediately appealable. *Harrod v. Caney*, 547 S.W.3d 536, 540 (Ky. App. 2018); *Breathitt Cty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009); *Mattingly v. Mitchell*, 425 S.W.3d 85, 89 (Ky. App. 2013).

-6-

On appeal, County Defendants argue the trial court erred by determining they are not entitled to qualified immunity for the negligence claims against them in their individual capacities. This is the sole issue before us as "the scope of appellate review of an interlocutory appeal of the trial court's determination of the application of qualified official immunity is limited to the specific issue of whether the immunity was properly denied and nothing more." *Baker v. Fields*, 543 S.W.3d 575, 578 (Ky. 2018).

The standard for immunity is well-settled:

> "Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed. *Salyer v. Patrick*, 874 F.2d 374 (6th Cir. 1989). . . . [W]hen an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled. . . . But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. 63C Am. Jur. 2d, *Public Officers and Employees*, § 309 (1997). Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, *id*. § 322; (2) in good faith; and (3) within the scope of the employee's authority. *Id*. § 309; Restatement (Second) [of the Law of Torts § 895D cmt. g. (A.L.I. 1979)]. An act is not necessarily

"discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed. *Franklin* [*Cty.*] *v. Malone*, [957 S.W.2d 195, 201 (Ky. 1997) (quoting *Upchurch v. Clinton Cty.*, 330 S.W.2d 428, 430 (Ky. 1959))]. Qualified official immunity is an affirmative defense that must be specifically pled. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts. *Franklin* [*Cty.*] *v. Malone*, *supra*, at 201. "That a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature." *Upchurch v. Clinton* [*Cty.*], *supra*, at 430. *See also* Restatement (Second) Torts, *supra*, § 895D cmt. h; 63C Am. Jur. 2d, *Public Officers and Employees*, §§ 324, 325 (1997).

*Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2001).

Here, we must determine what qualified immunity County Defendants enjoy, if any, as an affirmative defense to the claims against them. We here note that qualified immunity is not a blanket shield for all tort claims. *Yanero*, the seminal authority on governmental immunity in Kentucky, held that qualified official immunity protects *discretionary* acts negligently performed by public officials so long as they are acting within their authority and in good faith. *Id*. at 522. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or

-8-

those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6, 134 S.Ct. 3, 5, 187 L.Ed.2d 341 (2013) (per curiam) (citations and internal quotation marks omitted). "[W]hen sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero*, 65 S.W.3d at 522 (citation omitted).

The trial court found County Defendants were not entitled to qualified official immunity because their actions were ministerial rather than discretionary. "Promulgation of rules is a discretionary function; enforcement of those rules is a ministerial function." *Williams v. Kentucky Dep't of Educ.*, 113 S.W.3d 145, 150 (Ky. 2003). Furthermore, "[s]ubdivision plats are approved . . . as a ministerial function to insure compliance with the subdivision regulations." *Nash v. Campbell Cty. Fiscal Court*, 345 S.W.3d 811, 815 (Ky. 2011) (citing *Kelly v. Cook*, 899 S.W.2d 517, 519 (Ky. App. 1995); KRS[2] 100.277; KRS 100.281(1); *Snyder v. Owensboro*, 528 S.W.2d 663 (Ky. 1975)).

County Defendants argue the language of the Regulations reveals the discretionary nature of their actions, citing Section 6.2 titled "**FAILURE TO INSTALL IMPROVEMENTS,**" which states:

> If it is determined by the Fiscal Court that improvements have not been installed as planned or that the

---

[2] Kentucky Revised Statutes.

> improvements are not properly guaranteed, then the Fiscal Court *may* take action to secure installation of the improvements, including, but not limited to, civil actions for injunctive relief, damages, and/or foreclosure against the developer and such providers of the guarantees. The parties executing the guarantee shall be firmly bound for the payment of all necessary costs therefrom, including the attorney fees and costs of the Fiscal Court.
>
> If such action is taken, no new building permit or certificate of occupancy or public approval by any public agency shall be issued or granted until all improvements are installed properly as determined by the Fiscal Court.

(Emphasis added.) County Defendants hone in on the word "may" to argue their actions—or more accurately, inactions—were discretionary rather than ministerial. It is well-settled that Kentucky courts have long construed "may" to be a permissive word as opposed to a mandatory one. Our legislature has also given guidance in this regard: when considering the construction of statutes, KRS 446.010(26) and (39) provide that "may" is permissive, and "shall" is mandatory. *See Alexander v. S & M Motors, Inc*., 28 S.W.3d 303, 305 (Ky. 2000). However, County Defendants ask our Court to look only at this singular provision rather than at the Regulations as a whole, including other relevant sections.[3]

---

[3] It is well-established in our Commonwealth that:

> Statutory construction requires certain principles be followed in order to give any statute its full and proper effect as intended by the legislature. When construing a statute, the function of the reviewing court is to effectuate the intent of the legislature. *Vance v. Kentucky Unemployment Ins. Comm'n*, 814 S.W.2d 284, 286 (Ky. App. 1991). "[E]ach section of a legislative act should be

In fact, the previous section—also numbered Section 6.2, but titled

"**GUARANTEES**"—provides, in relevant part:

> The subdivider may execute and file guarantees with the Fiscal Court . . . in lieu of actual installation or completion of the required improvements, except sidewalks, when requesting approval of the final plat.
>
> . . . .
>
> B. Except as herein provided, the guarantee *shall* be in the form of a good and sufficient surety bond . . . .
>
> C. With regard to street, road or right of way construction, the guarantee *shall* contain the further condition that, should the subdivider fail to complete all work and improvements required to be done by him within twenty-four (24) calendar months of the date of approval of the final plat, or within a mutually agreed upon extension, but never to exceed twelve (12) consecutive calendar months, that [sic] the Fiscal Court *shall* cause all the work to be done and improvements constructed. . . . All guarantees *shall* include a provision that in the event of any default on the part of the subdivider or the performance of any work or construction of any improvements for which such

read in the light of the act as a whole; with a view to making it harmonize, if possible, with the entire act, and with each section and provision thereof, as well as with the expressed legislative intent and policy." *Kentucky Tax Comm'n v. Sandman*, 300 Ky. 423, 426, 189 S.W.2d 407, 409 (1945), *overruled on other grounds by Com. ex rel. Allphin v. Borders*, 267 S.W.2d 940 (Ky. 1954). No part of a statute should be interpreted as "meaningless or ineffectual." *Lexington-Fayette Urban* [*Cty.*] *Gov't v. Johnson*, 280 S.W.3d 31, 34 (Ky. 2009). Finally, "statutes will not be given [such a] reading where to do so would lead to an absurd or unreasonable conclusion." *Hall v. Hospitality Res., Inc.*, 276 S.W.3d 775, 785 (Ky. 2008) (quotations and citation omitted).

*Downey v. Kentucky Unemployment Ins. Comm'n*, 479 S.W.3d 85, 89 (Ky. App. 2015).

guarantees have been deposited, the Fiscal Court may cause the required work to be done and the Fiscal Court *shall* be permitted to withdraw that amount required for payment of all costs therefore.

. . . .

G.  No release *shall* be made of guarantees until the Fiscal Court has received written certification from the developer's engineer and from the appropriate County official that all improvements have been constructed in accordance with the previously approved plans.

(Emphasis added.)  As previously mentioned, "shall" is mandatory.  If an action is mandatory, its performance is ministerial, not discretionary.  Here, KLP filed guarantees in the form of the bond, its change riders, and continuation certificates in lieu of completion of the subdivision's roadways.  This triggered County Defendants' duty to insure the guarantees complied with the Regulations. Nonetheless, and contrary to the provisions of Section 6.2(C) and (G), County Defendants failed to insure the required language was included in the bond, they returned the bond without proper certification, and they failed to cause the work to be done or improvements to be constructed.  These actions concerned enforcement of established regulations and were integral to the approval of the final plat; therefore, the actions were unquestionably ministerial in nature.  *Williams*, 113 S.W.3d at 150; *Nash*, 345 S.W.3d at 815; *Kelly*, 899 S.W.2d at 519.

Additionally, the Regulations, in Section 1.1(A)(3), state proposed roads "*shall* be properly built prior to acceptance or with adequate security to

-12-

insure that said roads will be built without the expenditure of public funds."

(Emphasis added.) Section 6.1 also provides:

> [n]o final subdivision plat *shall* be approved by the Fiscal Court . . . until the required improvements are constructed in a satisfactory manner and certified as such by the developer's engineer and approved by the appropriate County and City, if applicable, officials having jurisdiction. In lieu of such prior construction, the Fiscal Court may accept guarantees *as provided in this regulation*.

(Emphasis added.) These provisions and their use of the word "shall" further support the trial court's finding that County Defendants' performance of their duties concerning approval of the plat and bond were ministerial rather than discretionary. Further, Section 6.1 only allows acceptance of guarantees compliant with the Regulations, and as previously noted, the guarantees herein did not contain the language required by Section 6.2. Therefore, County Defendants are not afforded qualified official immunity, and the trial court did not err in its determination to that effect.

## CONCLUSION

Therefore, and for the foregoing reasons, the orders entered by the Calloway Circuit Court are AFFIRMED.


ALL CONCUR.

BRIEFS FOR APPELLANTS:

Stacey A. Blankenship
Kristen N. Worak
Paducah, Kentucky

BRIEF FOR APPELLEE:

Brian A. Veeneman
Daniel P. Reed
Louisville, Kentucky